**INLAND MUT. INS. CO.**
v.
**EASTERN MOTOR LINES Inc. et al.**
**Civ. A. No. 1507.**

United States District Court,
W. D. South Carolina,
Greenville Division.
Jan. 12, 1954.

Wyche, Burgess & Wyche, Greenville, S. C., for plaintiff.

Johnson & Johnson, Spartanburg, S. C., for Eastern Motor Lines.

Hutson & Drake, Greenville, S. C., for James Gillespie.

WILLIAMS, District Judge.

This matter was heard by me in Greenville, South Carolina, November 13, 1953 upon separate motions of the defendants to dismiss the complaint. The separate grounds of the motion are, in substance, as follows:

(1) That a determination of the liability of plaintiff will be a declaration of the liability of the insured defendant, Eastern Motor Lines, Inc., to the defendant, James Gillespie.

(2) That plaintiff's liability on the policy can be determined in Gillespie's State Court action against Eastern Motor Lines and that the action is an attempt to have Gillespie adjudged an employee of Eastern, which would be a good defense in the State Court action because Gillespie's exclusive remedy as an employee would be under the South Carolina Workmen's Compensation Act.

(3) That this declaratory judgment suit would interfere with Gillespie's pending State Court suit.

(4) That the action is an attempt to have Gillespie adjudged a passenger or guest of Eastern which would have a direct bearing on the latter's liability to him.

(5) That if Gillespie were a guest or passenger, plaintiff is not relieved from liability under the policy and applicable State laws and regulations.

(6) That an actual controversy does not exist between the parties.

(7) That the requisite jurisdictional amount in controversy is not present.

The plaintiff is an insurance company organized under the laws of the State of West Virginia and the defendant Eastern Motor Lines is a South Carolina corporation engaged in the general trucking business as a common carrier of property in interstate commerce. The defendant Gillespie is a citizen and resident of Greenville County, South Carolina.

On the 16th day of June, 1952, in Anderson, South Carolina, the defendant James Gillespie secured a ride back to Greenville on the truck of the Eastern Motor Lines. Before going to Greenville the driver of the truck made some deliveries at Piedmont Gas Company in the City of Anderson, South Carolina.

While the defendant James Gillespie was assisting the driver in the unloading of merchandise a refrigerator slipped from the hands of the driver of the truck and fell upon the defendant James Gillespie and seriously injured him. Suit was filed on January 7, 1953 against Eastern Motor Lines in the Court of Common Pleas for Greenville County. The complaint sets forth that the injuries to the defendant James Gillespie resulted from the negligence, wilfulness, recklessness, and wantonness of the agent (the driver) in unloading refrigerators from the truck. This suit has not been tried and is now pending in the Court of Common Pleas for Greenville County. On September 22, 1953 the defendants were served with a copy of a complaint praying for a declaratory judgment in favor of Inland Mutual Insurance Company, a corporation. A motion to dismiss the complaint of the plaintiff has been made by both of the defendants herein on the grounds above stated.

On April 2, 1952, plaintiff issued to defendant Eastern Motor Lines a standard automobile liability policy No. 79829 on certain trucks. The policy was in an amount in excess of $3,000. This policy, copy of which is attached to the complaint, contained, among other things, the following:

"Insuring Agreements

\*    \*    \*    \*    \*    \*

"III    Definition of Insured

"\* \* \* The insurance with respect to any person or organization other than the named insured does not apply:

\*    \*    \*    \*    \*    \*

"(b) to any employee with respect to injury to or sickness, disease or death of another employee of the same employer injured in the course of such employment in an accident arising out of the maintenance or use of the automobile in the business of such employer.

\*    \*    \*    \*    \*    \*

"Exclusions

"This policy does not apply:

\*    \*    \*    \*    \*    \*

"(d) under coverage A (Bodily Injury Liability), to bodily injury or sickness, disease or death of any employee of the insured while engaged in the employment, other than domestic, of the insured or in domestic employment if benefits therefor are either payable or required to be provided under any workmen's compensation law;

\*    \*    \*    \*    \*    \*

"Endorsement

"Exclusions on Commercial Trucks

"In consideration of the reduced premium at which this policy is issued it is expressly understood and agreed, any and all conditions of the policy terms to the contrary notwithstanding, that:

"This Policy Does Not Cover Passengers Either When Carried for a Monetary Consideration or as Guests Without Any Implied Charge.

And that no claim or action shall be maintained under this policy for any injuries sustained by or inflicted upon any person or persons while riding upon or within any vehicle, named or operated under the said policy.

"This endorsement to be effective as of 12:01 A.M. of the 3rd day of April, 1952.

"All other terms and conditions remain unchanged.

"Attached to and forming a part of Automobile Casualty Policy No. 79829 issued by the Inland Mutual Insurance Company, of Huntington, West Virginia to Eastern Motor Lines, Inc.

"R. A. Polk (Signed)    W. H. Norton (signed)
"Secretary    President

"Countersigned and issued at Greenville, S. C. this 2nd day of April, 1952.

"By————————————————

Authorized Representative"

On August 22, 1952, plaintiff wrote Eastern Motor Lines, Inc. a letter reserving its rights under the policy in investigating the accident and in defending any suit instituted as a result thereof. On January 7, 1953, the defendant Gillespie filed suit against defendant Eastern Motor Lines for $100,000 in the Court of Common Pleas for Greenville County. The defendant Eastern Motor Lines demanded that the plaintiff defend the suit and pay any judgment which might be rendered under the policy. The plaintiff contends that it is not liable to Gillespie because, (1) he was a passenger or guest within the policy endorsement or (2) the alleged injuries were sustained by Gillespie while riding upon or within the truck under the endorsement or (3) that Gillespie was an employee of insured and not covered by the policy. Both of the defendants herein now contend that the plaintiff is required to defend, the suit and pay any judgment rendered under the policy.

The complaint prayed in substance for a judgment declaring the rights and obligations of the plaintiff and defendants under the policy and declaring that the plaintiff was not thereby obligated to defend the action brought by the defendant Gillespie against defendant Eastern, or to pay any judgment which said defendant might obtain against him.

These are the relevant facts admitted by the defendants in their motions to dismiss. The numerous grounds of the motions to dismiss raise the following questions:

(1) Are the jurisdictional prerequisites for the institution of a federal declaratory judgment under Title 28, U.S.C.A. Sections 2201 and 2202, present in this case?

(2) Does the State Court action now pending involve the same or different issues from those here presented?

There seems to be no doubt that the jurisdictional prerequisites for the institution of this suit are present.

There is an actual controversy between the parties. Demand has been made on the plaintiff by the defendant (1) that the insurance company undertake at its own expense the defense of the case, (2) that the insurance company be responsible for any judgment as a result of the $100,000 damage suit as well as any court costs, and (3) that the insurance company is not liable for any judgment, costs, etc. that might result in the state court action of Gillespie against Eastern Motor Lines, the insured, because (a) Gillespie was a guest or passenger in the insured vehicle, (b) his injuries were sustained while riding upon or within said vehicle and (c) Gillespie was an employee of Eastern at the time of the injury. The question of defense under these circumstances presents a very real and immediate controversy which the parties are entitled to have determined before the trial of the state court action. The following cases are cited in support: Maryland Casualty Co. v. Pacific Coal & Oil Co., 1941, 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826; Aetna Casualty & Surety Co. v. Yeatts, 4 Cir., 99 F.2d 665, 670; Maryland Casualty Co. v. Consumers Finance Service, Inc. of Pennsylvania, 3 Cir., 101 F.2d 514, 516; Maryland Casualty Co. v. United Corporation of Massachusetts, 1 Cir., 111 F.2d 443; Aetna Life Insurance Co. v. Haworth, 300 U.S. 227, 239, 242, 57 S.Ct. 461, 463, 464, 81 L.Ed. 617, 108 A.L.R. 1000; Traders & General Ins. Co. v. Rudco Oil & Gas Co., 10 Cir., 129 F.2d 621, 142 A.L.R. 799 (also see footnote 12, page 12, 142 A.L.R.).

The case of American Casualty Co. of Reading, Pa. v. Howard, 4 Cir., 1949, 173 F.2d 924, is in point and holds that the District Court should have heard the action and should have declared the rights of the parties under the policy. The court says:

"There is, we think, a very real and vital controversy here. * * * Elias Howard claims, also, that Casualty was further obligated both to defend the action under the Survival Statute and to pay any judg-

ment therein recovered, regardless of its amount and regardless of the policy limits. Against all this, Casualty asserts that its liability under the judgment in the Lord Campbell's Act case was limited to $5,000 (the policy limit for death or bodily injury to one person); and, further, that Casualty is under no duty either to defend the action under the Survival Act or to pay, in whole or in part, any judgment recovered therein.

\* \* \* \* \* \*

"Casualty is thus placed in a precarious dilemma. If Casualty, as it claims, owes no further duties to the other parties, it can retire gracefully and leave the Howards and the Roberts to settle their own differences. If, however, Casualty must defend the Survival Statute action and pay any judgment recovered therein, Casualty is entitled to know this. Manifestly, if these duties are imposed on Casualty, it will be to Casualty's interest either to defend this action vigorously or to attempt an amicable settlement.

"On the other hand, Elias Howard should be informed whether or not he must alone defend the Survival Statute action and whether he alone must pay any judgment recovered in that action. Surely his willingness to attempt a settlement and the vigor of his defense will be materially affected by the decision of these questions, which also affects the conduct of the Administrator. His receptivity to offers of settlement as well as his conduct of the trial of this case may be quite different depending upon whether or not he must fight not only Howard but Casualty and whether, if he recovers a judgment, he can look for its satisfaction only to Elias Howard or, if Elias Howard fails to pay such judgment, he can ultimately resort to Casualty for its payment.

"It is pointed out to us that the liability of Casualty, if any, as to the judgment obtained under the Lord Campbell's Act, can be settled in the action now pending between Elias Howard and Casualty in the State Court, in which action the Administrator has no interest, and which is not removable to a federal court. This action had not been instituted when Casualty filed its action for a declaratory judgment, and the issues in the action under the Lord Campbell's Act can be settled under a declaratory judgment along with the seemingly more important issues, as to both Elias Howard and Casualty, involved in the action under the Survival Statute.

"We are also told that the issues involved, as to Elias Howard and Casualty, in the Survival Statute action are moot, hypothetical and conjectural; for, if judgment in that case should be in favor of defendant, then there would be no issue in that connection between Elias Howard and Casualty. But no one can now accurately foretell just how such a judgment will go. And, further, as we have already pointed out, Casualty is vitally interested (so is Elias Howard and, in a minor measure, the Administrator) in knowing, before the trial of that action, just what, if any, its rights and liabilities therein are or may be, so that, in the light of this knowledge, Casualty can determine just what course of conduct it should, or must, adopt.

"Casualty is not, and cannot be, a party to the action instituted by the Administrator against Elias Howard under the Survival Statute. And nowhere in the State Court is there pending any litigation involving the duty of Casualty to defend that action and to pay any judgment that might be recovered therein. Cf. Indemnity Ins. Co. v. Schriefer, 4 Cir., 142 F.2d 851; Aetna Casualty & Surety Co. v. Quarles, 4 Cir., 92 F.2d 321; Maryland Casualty Co. v. Boyle Construction Co., 4 Cir., 123 F.2d 558. So

there are issues involved in that connection which can (and should) be settled in the instant action for a declaratory judgment.

"As we pointed out in the case of Indemnity Ins. Co. v. Schriefer, supra, a suit for declaratory judgment should not be entertained for the purpose of trying in the federal court litigation properly pending in a state court, as in cases where the only defense of the insurance company against liability under its policy is the same as that asserted by the defendant in the state court as a defense to liability for tort. This reasoning does not apply, however, where, as here, there is 'a real controversy between the company and the assured, which could not be determined by litigation pending in the state court or which it was important to determine before that litigation was brought to hearing.' See 142 F.2d at pages 851, 853." 173 F.2d at pages 928 and 929.

The second question is: Does the state court action involve the same issues as those presented in this federal court action?

█ The facts in this case which have been given indicate clearly that the declaratory judgment action can settle all controversies as to insurance coverage. The state court suit could not possibly determine the questions which have arisen as to the rights and obligations of the plaintiff under its insurance policy. The Declaratory Judgment Act is directed to the basic issue of the extent of the insurance policy coverage, in order that the question of the company's obligation to defend, along with other questions of coverage, can be definitely determined at one time in one action, rather than through multiple state court proceedings which can only decide questions after each party has been compelled to commit itself to a course of action at its peril. This action would determine whether or not the insurance company should be required to defend the action in the state court and pay the judgment, or be re-

lieved from such duty under its contract of insurance. It is to the interest of all parties to know this question in advance. It is clear that both from a practical standpoint as well as a matter of law, the insurance company is entitled to ascertain its legal status and in one comprehensive action clear the confusing and possible multiple state court actions. For example, if Gillespie is excluded under the policy as an employee, the insurance company would be justified in putting the burden of settlement on the insured. If, on the other hand, Gillespie is not an employee and coverage exists, the insurance company would not be justified in calling upon the insured to settle unless and until it had gone to the full limits of its policy in settlement.

█ The United States Supreme Court, as well as the Circuit Court of Appeals for the Fourth Circuit, has held that the purpose of the Declaratory Judgment Act is to avoid trying cases piecemeal and to afford an adequate, expedient and inexpensive remedy for declaring the rights and obligations of litigants in one action. Maryland Casualty Co. v. Pacific Coal & Oil Co., 1941, 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826; Brillhart, Administrator, v. Excess Insurance Company of America, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620; Aetna Casualty & Surety Co. v. Yeatts, 4 Cir., 99 F.2d 665, 670; State Farm Mut. Automobile Ins. Co. v. Hugee, 4 Cir., 115 F.2d 298, 132 A.L.R. 188; Maryland Casualty Co. v. Boyle Const. Co., Inc., 4 Cir., 123 F.2d 558; Maryland Casualty Co. v. Faulkner, 6 Cir., 126 F.2d 175; Maryland Casualty Co. v. Consumers Finance Service, Inc., of Pennsylvania, 3 Cir., 101 F.2d 514, 516.

The case of Aetna Casualty & Surety Co. v. Yeatts, 99 F.2d 665, which was decided by the Fourth Circuit Court of Appeals, presents similar issues to the case at bar. In that case the state court suit was for malpractice and the federal declaratory judgment suit was instituted by the insurance company requesting adjudication that its policy did not cover the claim asserted, and that the insur-

ance company was under no obligation to defend or indemnify the insured. This excluded coverage for damages which were caused while assured was engaged in the performance of a criminal act. The complaint alleged abortion performed by the assured's physician. At page 669 of 99 F.2d Judge Soper, speaking for the court, said:

"It is no answer to a suit for a declaratory judgment that the plaintiff may have an adequate remedy elsewhere or that he seeks to establish a defense to a pending claim rather than affirmative relief; * * *.

"Bearing these considerations in mind, we are nevertheless of the opinion that a case is made on the facts recited for the relief afforded by a declaratory judgment. The immediate question which the surety must decide is whether it is obliged to defend the suit against the insured in the state court. Obviously its decision cannot await the determination of that suit, nor need the determination of its duty in this respect interfere with the trial of the state suit. An actual controversy as to its contractual duty has arisen between it and the holder of its policy, and hence such a situation exists as is contemplated by the terms of the statute. Moreover, a question of coverage is involved, for the duty to defend and the duty to indemnify are both absolved by criminal conduct on the part of the insured, and this question may not be conclusively decided in the state suit to which the company is not a party, even though it undertakes the defense. See Carpenter v. Edmonson, 5 Cir., 92 F.2d 895. In similar situations it has been held in a number of recent cases that the insurer is entitled to be advised by the court whether or not it is obligated to defend and indemnify the insured against claims upon which suits are threatened or have already been brought. * * * [citing a host of cases from various jurisdictions] ;

* * * * * *

"Moreover, as we have already shown, the suits respectively pending in the state and federal courts do not cover the same ground. The claimant is not a party to the insurance contract and is not now suing thereon, whereas the insurer bases its suit on the provisions of the policy, confines itself to the question of coverage and does not ask the court to determine the validity of the claim of the administrator of the deceased woman against the physician. * * *"

The mere existence of another adequate remedy will not bar or defeat jurisdiction of the court in a federal declaratory judgment action. This question has arisen in the federal courts on so many occasions that Rule 57 of the Federal Rules of Civil Procedure, 28 U.S.C.A., was adopted, which states:

"The procedure for obtaining a declaratory judgment pursuant to Title 28, U.S.C., § 2201, shall be in accordance with these rules, and the right to trial by jury may be demanded under the circumstances and in the manner provided in Rules 38 and 39. The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate. The court may order a speedy hearing of an action for a declaratory judgment and may advance it on the calendar. As amended Dec. 29, 1948, effective Oct. 20, 1949."

It is my opinion that the federal court under the facts of this case could not, in the exercise of its discretion, refuse jurisdiction of the case. It is well settled that the discretion to be exercised by the court in such a case is a jurisdictional discretion. If the prerequisites to jurisdiction are present and the case can be settled more expeditiously in a federal court, then the court should exercise jurisdiction. A different

holding would defeat the purpose of the Declaratory Judgment Act. I cannot imagine any more appropriate basis for affording declaratory relief than in the determination of questions as to the rights and obligations of an insurance company under its policy.

As summarized in the exhaustive annotation, "Application of Declaratory Judgment Acts to Questions in Respect of Insurance Policies", 142 A.L.R. 8, at page 12:

"* * * That the remedy of declaratory judgment, under Federal and State declaratory judgment acts, is a proper one for the determination of questions arising from the construction and operation of insurance policies with regard to the rights and liabilities of the parties thereunder is well settled, * * *." (Citing in support two full pages of cases from almost every jurisdiction, including the United States Supreme Court.)

Thus, in the case of Maryland Casualty Co. v. United Corporation of Massachusetts, 1 Cir., 111 F.2d 443, at page 446, the court stated:

"* * * it has been held, we think rightly, that the application of an insurer for a declaratory judgment cannot be denied as a matter of discretion." (Citing Maryland Casualty Company v. Consumers Finance Service, Inc., 3 Cir., 101 F.2d 514, 515, 516.)

Likewise, in the case of Maryland Casualty Co. v. Boyle Const. Co., Inc., 4 Cir., 123 F.2d 558, at page 563 the court stated (quoting from a previous case):

"* * * the discretion to grant or refuse the declaratory relief "is a judicial discretion, and must find its basis in good reason," and is subject to appellate review in proper cases. We think that this discretion should be liberally exercised to effectuate the purposes of the statute * * *.'"

And in the case of Maryland Casualty Company v. Faulkner, 6 Cir., 126 F.2d 175, at page 178, the court stated:

"* * * The remedy of a declaratory judgment will be refused, granting the court has discretion to decline it, only if it will not finally settle the rights of the parties. Aetna Casualty & Surety Co. v. Quarles, 4 Cir., 92 F.2d 321. It will not be refused merely on the ground that another remedy is available or because of the pendency of another suit if the controversy between the parties will not necessarily be determined in that suit. * * *"

In the case of Aetna Casualty & Surety Co. v. Quarles, 4 Cir., 1937, 92 F.2d 321, the court emphasizes that only where the issues in another proceeding are "identical" to the federal court proceeding, is the federal court justified in refusing to grant declaratory judgment relief. Such a situation does not exist in the instant case. The court, speaking through Judge Parker, pointed out that the discretion referred to was a "judicial discretion" to be exercised on the basis of "good reason", 92 F.2d at page 324:

"As said by Judge Knight in the case of Automotive Equipment Co. v. Trico Products Corporation [D.C., 11 F.Supp. 292], however, the discretion to grant or refuse the declaratory relief 'is a judicial discretion, and must find its basis in good reason,' and is subject to appellate review in proper cases. * * *"

It is no defense to federal jurisdiction that the same facts might be developed in the federal courts as in the state courts and that the parties might be required to "show their hand" in the declaratory judgment suits. The plea of "fishing expedition" does not clothe the parties with immunity from bringing to life the facts s they exist. This question was definitely determined by the United States Supreme Court in the case of Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 389, 91 L.Ed. 451, as follows:

"* * * Thus civil trials in the federal courts no longer need be carried on in the dark. The way is now clear, consistent with recognized privileges, for the parties to obtain the fullest possible knowledge of the issues and facts before trial.

\* \* \* \* \* \*

"* * * No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case. Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession. * * *"

It is my conclusion that if I were to grant defendants' motions to dismiss, the effect would be to deny the plaintiff its day in court.

For the foregoing reasons, the motions to dismiss the action brought by the plaintiff for declaratory judgment are hereby dismissed.