**Mrs. Lorena Bates SMITH et al.**

v.

**TRANSIT CASUALTY COMPANY.**

**Civ. No. 1735.**

United States District Court
E. D. Texas,
Sherman Division.
March 4, 1968.

Aubrey J. Roberts, George C. Chapman, Dallas, Tex., Jack Gray, John L. Sullivan, Denton, Tex., for plaintiffs.

Dean Carlton, Dallas, Tex., Paul Brown, Sherman, Tex., for defendant.

## OPINION

FISHER, Chief Judge.

The above entitled matter having come on for consideration and the Court having considered the claims of the parties, and after hearing evidence in connection

with the Stowers doctrine controversy, and having carefully considered the evidence and having been fully advised in the premises, makes certain findings of fact and conclusions of law as follows.

This case involves what is commonly known in Texas as the "Stowers Doctrine". In short, the Plaintiffs seek to recover damages against the Defendant on the grounds that the Defendant failed to exercise ordinary care to protect its insured inasmuch as it failed to settle a claim against the insured within the policy limits. Therefore, under the Stowers doctrine, the Defendant is rendered liable for the total amount of the judgment against the Defendant's assured, including the amount in excess of the policy limit.

■ The so-called Stowers doctrine was first established in the case of Stowers Furniture Co. v. American Indemnity Co., 15 S.W.2d 544 (Tex.Com.App.1929), where the Court held that since the insurance contract gives an insurer complete control of the litigation, it is bound to exercise ordinary care in order to protect the interest of the assured and is:

" * * * held to that degree of care and diligence which an ordinary, prudent person would exercise in the management of his own business, and if an ordinary prudent person, in the exercise of ordinary care, as viewed from the standpoint of the assured, would have settled the case, and failed or refused to do so, then the agent (insurer) * * * should respond in damages." 15 S.W.2d 544, at 547.

On July 27, 1966, an action was commenced against the Defendant, Transit Casualty Co., in the District Court of Denton County, Texas, and subsequently was removed to the jurisdiction of this Court upon proper motion of the Defendant pursuant to the provisions of 28 U.S.C. § 1441.[1]

The pertinent facts as adduced from the stipulations and admissions of counsel, and from the evidence introduced at the trial of this case, are hereinafter set forth. Prior to February 8, 1962, for valid consideration, the Defendant made, executed and delivered to Mrs. Lorena Bates Smith its standard automobile liability policy No. AR710640. On or about February 8, 1962, while said insurance policy was in full force and effect, an accident occurred on State Highway 99, approximately four and one-half miles northeast of Denton, in Denton County, Texas, between an automobile owned and driven by Leo V. Selz and an automobile owned and driven by Mrs. Lorena Bates Smith. Lorena Bates Smith notified the Defendant of said accident, and the Defendant began making an investigation thereof. Subsequently, Mrs. Smith, through her attorneys, instituted suit in the District Court in Denton County, Texas, in Cause No. 26,230. Thereafter, by way of cross-action, Mrs. Bessie Selz, Individually and as Independent Executrix of the Estate of Leo v. Selz, deceased, filed suit against Mrs. Smith. The Defendant, Transit Casualty Co., insurer of Mrs. Smith, was promptly notified of the filing of the cross-action, and undertook charge of the defense of the cross-action.

This cause came on for trial on November 2, 1964. At the close of the evidence by the Plaintiff, the Court granted an instructed verdict against Mrs. Smith as to her claim for damages against the Selz Estate. The claims contained in the cross-action were submitted to a jury and a verdict was rendered in favor of Mrs. Bessie Selz against Mrs. Smith for the sum of $81,375.00. Based on such verdict, judgment

---

1. The Plaintiffs, Mrs. Lorena Bates Smith, and Mrs. Bessie Selz, individually and as Independent Executrix of the Estate of Leo V. Selz, deceased, were each at the time this action was commenced, and are each still a resident of Denton County, in the State of Texas. The Defendant, Transit Casualty Co., is a corporation incorporated under the laws of the State of Missouri and has its principal place of business in the State of Missouri. The amount in controversy exceeds the sum of $10,000.00.

was entered against Mrs. Smith for the sum of $76,500.00, and thereupon the attorneys for Transit Casualty Co. gave notice of intent to appeal and thereafter did appeal the case to the Fort Worth Court of Civil Appeals, which, after filing of a remittitur, affirmed the judgment against Mrs. Smith in the total sum of $51,375.00. Said judgment has now become final. A writ of execution on the outstanding judgment of $51,375.00 plus interest and court costs, was returned nulla bona on or about July 22, 1966.

The facts and circumstances surrounding the state court suit may be capsuled as follows. The evidence adduced at the state trial established that the accident occurred in the following manner. As Mrs. Smith was driving her car down her righthand side of the highway, she observed another vehicle driven by Mrs. Betty Jo Morris, attempting to pull onto the highway from the right hand shoulder. Allegedly, in order to avoid colliding with the rear of the Morris automobile, Mrs. Smith pulled to the left of the center stripe and struck the vehicle being driven by Leo V. Selz head-on as he approached in the opposite line of traffic. Mrs. Smith was seriously injured, and Mr. Selz was fatally injured and a passenger in his vehicle was also seriously injured in the collision. At the trial, the District Court Judge granted an instructed verdict that Mr. Selz was in no way guilty of negligence which proximately caused the accident in question, and placed the entire blame for the collision on Mrs. Smith, and accordingly assessed the damages against her above referred to.

## I.

Prior to and during the course of the trial in the state court, there was considerable discussion among counsel for all concerned as to the possibility of a settlement being reached which would be to the satisfaction of all parties. An offer to settle the claims against Mrs. Smith contained in the cross-action within the policy limits was made to the Defendant Transit Casualty Co., but the Defendant refused to accept said offer. The details of the settlement negotiations will be set out more fully hereinafter.

A review of the file of Transit Casualty Co. and the evidence in this record compel the conclusions that the Defendant was guilty of a failure to exercise ordinary care in not accepting the settlement offer of Mrs. Selz's attorneys to settle the claim against Mrs. Smith for $4,500.00. Transit Casualty Company's policy limit covering the Smith vehicle was $5,000.00 The investigation of the Defendant insurance company and its agents established well before trial that Mrs. Smith admittedly had seen the Selz automobile approaching in the other lane from the opposite direction. The impact was head-on in Mr. Selz's lane of traffic, and it was apparent that the chances of finding Selz guilty of contributory negligence were virtually non-existent. Furthermore, the damages asserted on the Selz claims included a death claim and were, of course, quite substantial. The Defendant's trial attorney, Mr. Hauer, repeatedly advised the home office of Transit Casualty Company of the existence of the Stowers doctrine, and urged that they be careful to watch for any settlement offers made within the policy limits. In addition, after taking her deposition, Mr. Hauer advised the Defendant that the insured, Mrs. Smith, would likely make a very poor witness at trial. Mr. Hauer advised the home office of Transit Casualty Company that a judgment against Mrs. Smith would probably be in the range of $50,000.00 to $75,000.00 should the case be submitted to a jury. However, in spite of the advice of its trial attorney, and regardless of its knowledge of the above information, Transit Casualty Company refused to accept the Selz's offer to settle all claims against Mrs. Smith for the sum of $4,500.00. The Court finds and concludes that such failure to settle within the policy limits constituted a failure on the part of the Defendant to exercise ordinary care to protect the interest of its insured, and such failure was a proxi-

mate cause of the entry of the judgment in the amount of $51,375.00 against Mrs. Smith.

## II.

█ In addition to the damages sought by the Plaintiff, Mrs. Selz, for the amount of the excess judgment, both Plaintiffs seek punitive damages in the amounts of $12,000.00 and $10,000.00 respectively, alleging gross negligence on the part of Transit Casualty Co. in failing to settle within the policy limits. In no event would Transit Casualty Co. be liable to Mrs. Selz, or the Selz estate for punitive damages for gross negligence in failing to settle. If there is gross negligence, punitive damages would inure solely to the benefit of the assured, Mrs. Smith.

██ The essence of the contention of the Defendant that failure to settle was not negligence in any degree is the fact that the insured, Mrs. Smith, had retained her own counsel to prosecute a personal injury claim against the Selz estate and Mrs. Morris. Apparently, the Defendant thought that since Mrs. Smith filed her own suit alleging that the fault was not hers but rather that of Mr. Leo Selz, the insurance carrier would never be found negligent for failing to settle. The evidence adduced reveals an obstinate reliance upon this idea by the Defendant. But in order for there to be gross negligence, the negligence must be such as constitutes a "conscious indifference for the rights and welfare of others." Fancher v. Cadwell, 309 S.W.2d 545 (Tex.Civ.App.1958). Although a stubborn and blind faith in the possibility of exoneration from negligence simply because Mrs. Smith filed a suit alleging she was not at fault constitutes a high degree of negligence when considered in the light of all the surrounding facts, nevertheless, this Court does not find that such negligence was a conscious indifference for the rights and welfare of others. The Court finds no grounds for punitive damages inasmuch as the Defendant is not guilty of gross negligence.

## III.

Under a trial amendment, the Plaintiffs further seek actual damages in the amounts of $2,250.00 for Mrs. Smith, and $6,000.00 for Mrs. Selz, representing money which Plaintiffs allege they would have received had settlement been reached. The basis for these claims is that the negligent failure to settle on the part of Transit Casualty Co. "blew-up" settlement negotiations with the insurance carrier representing Mrs. Morris.

The carriers for all three parties involved in the collision were negotiating for settlement in a "round-robin" fashion. That is, all carriers were to contribute to a "pot" from which each claimant was to draw out an agreed-upon amount representing a settlement of his claim. This rather unusual arrangement was being considered because of the cross-action filed in which each party to the collision alleged that the other party and Mrs. Morris were at fault, and prayed for damages from each. In other words, both Mrs. Smith and Mrs. Selz, individually and as administratrix of the estate of Leo Selz, claimed damage and sought indemnity from each other, as well as Mrs. Morris who was neither injured nor a party to the collision.

Indiana Lumbermens Mutual, the insurer of Mrs. Morris, had offered to contribute its policy limits in settlement whereby Mrs. Smith would have received $2,250.00 and Mrs. Selz would have received $6,000.00. Continental Insurance Co., the insurer for Mrs. Selz, had indicated it would contribute its policy limits if Transit Casualty Co. would do likewise. All of these settlement offers were conditional, however, and were not realized because of the conduct of Transit Casualty Co. The Defendant notified Mrs. Smith by letter that Transit Casualty Co. would regard settlement with the insurer of Mrs. Morris as a breach of the "cooperation" clause of her policy with Transit Casualty Co., and that Transit Casualty Co. would refuse to defend Mrs. Smith in the Selz cross-action if she effected the partial settlement with Mrs. Morris.

These unrealized conditional offers of settlement could not form the basis of a cause of action for damages. Moreover, the Court thinks it evident that the Stowers doctrine imposes liability for failing to *protect* the *insured* from claims asserted *against* the insured. The doctrine is not so broad as to impose a duty on the insurer to make, as well as save, money for the insured. Thus, there is no cause of action on behalf of either Plaintiff for actual damages for the amount that would have been received from the insurer of Mrs. Morris had settlement negotiations not failed.

## IV.

Application of the Stowers doctrine has been severely restricted in Texas by the "prepayment" rule. One of the requisites for asserting a cause of action for negligent failure to settle is the requirement that the insured must have actually paid the judgment in favor of the insured claimant before seeking indemnity from the insurer. In Universal Automobile Ins. Co. v. Culberson, 126 Tex. 282, 86 S.W.2d 727 (Tex.Com. App. opinion adopted 1935), reh. den. 87 S.W.2d 475, the Court held:

"* * * Culberson cannot assert same [action for negligent failure to settle within policy limits] until he has paid some sum on the judgment in excess of the $5,000 limit in the policy; and then only to the extent of his payment." 86 S.W.2d at 730–731.

The rationale for this rule is that the insured is in no way damaged until he pays money. Also, until there is pecuniary damage, there is no basis for a tort action.

In Linkenhoger v. American Fidelity & Casualty Co., 152 Tex. 534, 260 S.W.2d 884 (1953), the Texas Supreme Court hinted that the Texas attitude might be changed. That case dealt with the two year statute of limitations. The question turned on when the assured could have commenced a suit to recover damages. Although *Linkenhoger* did expressly approve *Culberson*, it answered the limitations question in terms of the earliest date on which suit could have been filed. This was held to be the day on which the damage judgment against the insured became final. No mention was made of the date on which the excess judgment was paid. Thus, the prepayment rule is subject to attack in Texas. Moreover, since prepayment is noticeably the minority rule among the several states (cf. 27 U.Pitt.L.Rev. 726, 1966), this Court feels that the Texas rule would now be revised in order that the Stowers doctrine might have full voice. Nevertheless, the United States Court of Appeals for the Fifth Circuit, in Seguros Tepeyac, S.A. Compania Mexicana, etc. v. Bostrom, 347 F.2d 168 (5th Cir. 1965), while recognizing a basic weakness in the prepayment rule rationale, felt compelled to follow the *Culberson* rule:

"If the Stowers doctrine is to be extended, Texas courts must do it." 347 F.2d at 179.

Reluctantly, this Court also considers itself *Erie*-bound to the prepayment rule.

One of the most obvious discrepancies under the *Culberson* rule is that if the assured is solvent, the Stowers doctrine may be utilized. But if the assured is insolvent, the negligent insurer is safe because the assured must first pay all or part of the excess judgment before seeking indemnity from the insurer.[2] Mrs. Smith fits the latter category.

The attorneys for Mrs. Smith and Mrs. Selz, realizing that recovery under *Culberson* was almost certainly precluded, devised an ingenious way to skirt around the prepayment rule. On July 23, 1966, after the writ of execution on the state court judgment was returned nulla bona, Mrs. Smith executed a promissory note for $51,375.00 payable on demand to Mrs. Selz. At the same time, Mrs. Smith wrote a check for $5.00 as an initial payment on the note, and received a receipt therefor. Along with

2. 41 Tex.L.Rev. 595 (1963).

the note and check, Mrs. Smith executed an instrument by which she assigned to Mrs. Selz her cause of action against Transit Casualty Co. to the extent of $51,375.00 for the negligent failure to settle within the policy limit, but expressly reserved any claim she might have for punitive damages.

The Plaintiffs argue that the effect of the note and assignment is, first, that the judgment has been *paid* by the note; i. e. Mrs. Smith no longer owes the judgment, only the note. Therefore, the *Culberson* rule is met, and Mrs. Smith has a cause of action for the full amount of the excess judgment. Second, the Plaintiffs argue that Mrs. Selz is entitled to prosecute Mrs. Smith's cause of action against the Transit Casualty Co. by reason of the assignment.

■ At the time of the trial, Mrs. Smith was seventy-seven years old, having made one $5.00 payment on the note. No subsequent payments have been made. She testified that $5.00 per month represented the maximum she could afford to pay on the note out of her teacher's retirement benefits. Due to her age and financial situation, there is no likelihood that Mrs. Smith will be able to pay the entire promissory note given to Mrs. Selz during her lifetime. Under the circumstances, the Court can only conclude that the note to Mrs. Selz was a sham. This Court finds that the note was not bona fide and cannot be given effect as full payment of the judgment. Thus, the $5.00 payment from Mrs. Smith to Mrs. Selz was actually a payment on the judgment itself.

## V.

The fact that the note was a sham does not taint the assignment, however. Mrs. Smith's assignment of her cause of action against Transit Casualty Co. was valid insofar as it conveyed whatever rights Mrs. Smith might possess to the Selz estate.

■ The Defendant contends that the Court cannot honor an assignment of a cause of action for excess judgment by the insured to the judgment creditor because it is an assignment of a tort action. That is, if there is a breach of duty, it is a duty owed solely to the assured and cannot be assigned. This Court disagrees. Although the cause of action, if any, sounds primarily in tort, the duty owed to use ordinary care in settlement negotiations also constitutes an implied contractual warranty in its policy to exercise at all times due care when utilizing its expertise in the exclusive control of investigating and defending claims against the insured. Thus, an action based on breach of this duty also sounds in contract, and may, therefore, be properly assigned. Gray v. Nationwide Mutual Insurance Co., 422 Pa. 500, 223 A. 2d 8 (1966); Comunale v. Traders and General Insurance Co., 50 Cal.2d 654, 328 P.2d 198, 68 A.L.R.2d 883 (1958). The extent of the rights which Mrs. Selz acquired through the assignment will be more fully discussed hereafter.

## VI.

Under the terms of the policy issued to Mrs. Smith, Transit Casualty Co. promised to:

" * * * pay all expenses incurred by the Company, all costs taxed against the. insured * * * and all interest accruing after entry of judgment until the Company has paid or tendered or deposited in court such part of such judgment as does not exceed the limit of the Company's liability thereon * * *."

After the state court judgment became final, Transit Casualty Co. deposited in the registry of the state court $9,693.78, representing the full principal amount for which Defendant was liable on the judgment (i. e. $5,000 for personal injuries and $1,500 for property damages) together with all accrued interest due on the entire judgment to such date. Plaintiffs allege, nevertheless, that this did not stop interest from running on the entire judgment. The basis for the allegation concerns a deposit of $175.00 made into court while the state district court judgment was on appeal. The

Defendant had tendered this sum in the form of a "Cash Deposit in Lieu of an Appeal Bond" pursuant to Rule 354 of the Texas Rules of Civil Procedure. Rule 354 states:

> " * * * appellant may deposit with the clerk cash equal to the estimated costs in the trial court and the cost of the statement of facts and transcript, less such sums as have been paid by appellant on the costs, and in that event the clerk shall file among the papers his certificate showing that the deposit has been made and copy same in the transcript, and this shall have the force and effect of an appeal bond."

Mrs. Geraldine Foster, the District Clerk for Denton County, Texas, testified at the trial that while the appeal was pending before the Court of Civil Appeals she transferred the $175.00 to her costs book so that it showed that the $175.00 had been paid by the Defendant toward the Costs of the original trial. She testified further that this was error on her part inasmuch as she would have been required to return the $175.00 to the Defendant had the case been reversed on appeal. This possibility did not present itself, however, because the case was affirmed. Thus, the $175.00 remained in the registry of the court to the credit of the Defendant. All costs not previously paid were paid from this sum.

Plaintiff now contends that since the $175.00 tender was not actually a deposit for court costs, but rather had the effect of an appeal bond, and since the $175.00 would have been returned to Transit Casualty Co., or its attorneys, had the Defendant prevailed on appeal, the tender or payment of costs was not an unconditional offer or tender as required by Plasky v. Gulf Ins. Co., 160 Tex. 612, 335 S.W.2d 581 (1960) and Baucum v. Great American Ins. Co. of New York, 370 S.W.2d 863 (Tex.1963), because Transit Casualty Co. did not relinquish all control to the $175.00.

Whatever the irregularities with respect to the bookkeeping procedure of the District Clerk for Denton County, Texas, the fact remains that all costs were in fact paid from prior deposits as well as the $175.00 deposit. Thus, the specific language in the insurance policy requiring that the insurer pay all costs was met. Moreover, the "Cash Deposit in Lieu of Appeal Bond" which was tendered for costs of the appeal was conditional only in that it was contingent upon the Texas Court of Civil Appeals affirming the trial court; i. e. contingent upon actual liability for payment of costs under Texas law. This is not the type condition which the *Plasky* and *Baucum* cases condemned, and will not so operate here to keep interest on the entire judgment running. The insurance company, Transit Casualty Co., made full tender of all for which it was liable into the state court registry, and interest ceased to run against Transit Casualty Co. on the excess judgment as of that date.

## VII.

Coming now to the effect of the assignment from Mrs. Smith to Mrs. Selz of her cause of action against Transit Casualty Co., a question arises as to Mrs. Selz standing to sue in this action. Under Texas law, Mrs. Selz's cause of action on her own, i. e. as the injured party, exists only to the extent of the policy limits. Seaton v. Pickens, 126 Tex. 271, 87 S.W.2d 709, 106 A.L.R. 512 (1935). But as a third party beneficiary, she has no standing to sue on her own for the excess of the judgment over the policy limits. Nor does Mrs. Selz have a valid cause of action under the note from Mrs. Smith, as it was not bona fide. However, under the Assignment and under Texas law an injured claimant stands in the shoes of the insured insofar as standing to sue in tort is concerned. 8 Appleman, Insurance Law and Practice, 1962 revision sec. 4811 [quoted with approval in the *Séguros* case (347 F.2d 168 (1965) at page 178]. Therefore, the critical issue is whether or not Mrs. Smith had a valid cause of action for

the excess which she could assign. Whatever relief Mrs. Smith would have been entitled to determines what relief, if any, should be given to Mrs. Selz.

## VIII.

As outmoded as the *Culberson* "prepayment" rule may be, it is still law in Texas. Under the *Seguros* case, this Court is *Erie*-bound to apply that rule. Since Mrs. Smith's note, which purported to be a payment of the judgment, was not bona fide, it will not enable her to get around the *Culberson* rule of prepayment. However, this Court has previously found that the $5.00 payment from Mrs. Smith to Mrs. Selz was in fact a payment on the judgment. Under *Culberson*, there is a cause of action for any amount paid on the excess judgment. Therefore, Mrs. Smith had a valid cause of action for $5.00 against Transit Casualty Co. which is now properly asserted by Mrs. Selz through the assignment. Accordingly, this Court will enter judgment in favor of the Plaintiff, Mrs. Bessie Selz, in the amount of $5.00.

While $5.00 represents the maximum monetary damages that the Court can award under the facts, the Court is not limited to money damages as a sole form of relief. It is clear to the Court that the insurer has breached its duty to exercise ordinary care to protect the insured to the amount of the policy limits. Thus, Mrs. Smith's cause of action for the entire excess judgment against Transit Casualty Co. is complete. She is merely precluded from asserting same for any amount above $5.00 It would be a useless waste of time and effort for the Plaintiffs to be required to come back into this Court seeking an order of reimbursement each time a payment is made on the excess judgment to Mrs. Selz from Mrs. Smith. Therefore, in addition to a money judgment for $5.00, this Court deems this an appropriate situation to grant a Declaratory Judgment. The remedy is fully available in Texas [3] and is also an important element of Federal practice.[4]

The Supreme Court of the United States has outlined the essential elements for declaratory relief as follows:

A real and substantial controversy, justifiable in character, touching the legal relations of parties having adverse legal interests, admitting of specific relief through a decree conclusive in character, as distinguished from an advisory opinion, although it need not award process or the payment of damages. Aetna Life Ins. Co. of Hartford Conn v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L. Ed. 617 (1937), reh. den. 300 U.S. 687, 57 S.Ct. 667, 81 L.Ed. 889. It appears to this Court that the instant case fits precisely every element requisite for a Declaratory Judgment as contemplated by the Supreme Court.

One important function of a declaratory judgment is to avoid multiplicity and circuity of actions. Inland Mut. Ins. Co. v. Eastern Motor Lines, 119 F. Supp. 344 (D.C.S.C.1954); Security Ins. Co. v. Jay, 109 F.Supp. 87 (D.C.Minn. 1952); 3 Barron & Holtzoff Federal Practice and Procedure, Sec. 1262, p. 273 (Wright Ed., 1958). The Court is convinced that Mrs. Smith has every intention to make reparation to Mrs. Selz and the Selz estate in satisfaction of the state court judgment to the extent of her financial capability. Thus, the availability of declarative relief becomes extremely important in order to avoid multiplicity of suits and end this Stowers controversy. The Court will, therefore, enter a declaratory judgment ordering that any and all future payments made by Mrs. Smith to Mrs. Bessie Selz and the Estate of Mr. Leo Selz in compliance with the judgment rendered against her in the District Court for

---

3. The Uniform Declaratory Judgment Act was enacted in 1943. Vernon's Ann.Tex. Civ.Stat. art. 2524–1, §§ 1–16.

4. 28 U.S.C. § 2201; Rule 57 of the Federal Rules of Civil Procedure.

Denton County, Texas, shall be immediately reimbursable by the Defendant, Transit Casualty Co.

Judgment will be entered in accordance with the above.