**SEGUROS TEPEYAC, S. A., COMPANIA MEXICANA de SEGUROS GENERALES, Appellant,**

v.

**James L. JERNIGAN, Appellee.**

**No. 25651.**

United States Court of Appeals Fifth Circuit.

April 15, 1969.

Rehearing Denied May 7, 1969.

Chilton Bryan, Bryan & Patton, James H. Westmoreland, Houston, Tex., for appellant.

Stanley S. Crooks, Dallas, Tex., for appellee.

Before GEWIN, PHILLIPS * and GOLDBERG, Circuit Judges.

GOLDBERG, Circuit Judge:

We take the *Erie* [1] route once again to visit our old friends in Texas Juris-

---

* Judge Harry Phillips of the Sixth Circuit, sitting by designation.

1. Erie Railroad Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

prudence, *Culberson* [2] and *Linkenhoger*.[3] Our visit pertains to yet another twist in what is known in Texas as the Stowers doctrine, a principle established in the case of Stowers Furniture Co. v. American Indemnity Co., Tex.Com.App. 1929, 15 S.W.2d 544. According to Stowers, an insurer has a duty to exercise ordinary care to protect the interest of the insured, and failure to do so renders the insurer liable for any judgment rendered against the insured, including amounts in excess of the policy limit. However, the insured is not permitted to bring suit against his insurance company for negligence until he has made some payment in satisfaction of the judgment against him, and then only as to amounts in excess of the policy limit. See Universal Automobile Insurance Company v. Culberson, Tex.Com.App.1935, 126 Tex. 282, 86 S.W.2d 727, 87 S.W.2d 475. On this appeal we are asked to determine whether the statute of limitations in a Stowers type suit begins to run: 1) on the date the claim against the insured is reduced to judgment, or 2) on the date or dates when the insured makes payment on the judgment to the injured claimant. The district court was of the view that the statute of limitations did not begin to run until the date or dates of payment, and for reasons hereinafter discussed, we agree.

The tragedy impelling this litigation occurred in Mexico on January 28, 1958, and involved a serious collision between an automobile and a bus.[4] The automobile contained three occupants who were on a pleasure trip through Mexico: James L. Jernigan, Allen J. Sullivan and Maynard Bostrom. Jernigan was the owner of the car; Sullivan was driving with Jernigan's permission at the time of the accident; and Bostrom was asleep in the back seat of the car. Bostrom appears to have "sustained about as serious injuries as a person could endure and live." 225 F.Supp. at 227. He is today a permanent quadriplegic.

On July 12, 1960, Bostrom brought suit in the United States District Court for the Northern District of Texas against the owner, Jernigan, and against Sullivan, the driver. In a trial without a jury, judgment was rendered in favor of Bostrom in the sum of $270,000. A writ of execution against Jernigan was then issued, but was returned *nulla bona* on April 2, 1962.

In pursuit of a solvent target, Bostrom next initiated an action against Seguros Tepeyac S.A., Compania Mexicana, the Mexican insurance company that had issued Jernigan a three-day "Special Automobile Policy for Tourists." The jury in this second Bostrom suit found that Seguros was negligent "in not initiating or attempting to bring about a settlement" of Bostrom's claim within the limits of Jernigan's $5,000 policy. 225 F. Supp. at 227. The district court entered judgment for $270,000 against Seguros and overruled the Company's motion for judgment and for judgment n. o. v. On appeal our Court held that the policy was a liability rather than an indemnity policy and "that under Texas law as well as Mexican law the plaintiff had standing, as a third party beneficiary to the contract, to sue for the amount of the policy." Seguros v. Bostrom, 347 F.2d at 173. The judgment of the district court was affirmed insofar as it awarded $5,000 to Bostrom.

On the remaining $265,000 this Court reversed the judgment of the district court and held that Bostrom, the injured claimant, had no standing to sue the insurer for the excess over the policy limit.

2. Universal Automobile Insurance Company v. Culberson, 1935, 126 Tex. 282, 86 S.W.2d 727, 87 S.W.2d 475.

3. Linkenhoger v. American Fidelity & Casualty Co., 1953, 152 Tex. 534, 260 S.W.2d 884.

4. The facts here presented are more fully developed in the companion cases of Bostrom v. Seguros Tepeyac, S.A., Compania Mexicana de Seguros Generales, N.D. Texas 1963, 225 F.Supp. 222 and Seguros Tepeyac, S.A., Compania Mexicana v. Bostrom, 5 Cir. 1965, 347 F.2d 168.

In summarizing our decision, Judge Wisdom concluded:

"The Texas Stowers doctrine encompasses the principle that an injured claimant has standing to sue the insurer as a third party beneficiary of the insurance contract, but may sue only up to the amount of the policy limits. The Culberson limitation on the doctrine deprives the insured of standing to sue the insurer for the excess, except as to any amounts paid on the judgment in favor of the injured claimant. The claimant's rights in an action against the insurer can rise no higher than the insured's rights. When, as in this case, the insured has no standing to sue because of not having paid all or part of the judgment for the excess, the injured claimant has no standing to sue the insurer for the excess over the policy limits. We find it unnecessary to reach other issues in the case.

"Accordingly, the Court affirms the judgment below as to the face amount of the policy and reverses the judgment as to the excess amount over the policy limit of $5,000, without prejudice to the rights, if any, of the insured and the injured claimant, or either, to proceed against the insurer on claims and on a showing not inconsistent with this opinion."

Subsequent to this ruling, Jernigan's attorney negotiated a loan for Jernigan in the sum of $10,100 and transmitted this sum to Bostrom. Bostrom's attorney then sent a partial satisfaction of judgment to Jernigan's attorney, and Jernigan initiated the present suit in the United States District Court. Jernigan asserted his damages in the amount of $10,100 paid on the judgment to Bostrom and also requested a declaration that the insurance company reimburse him for any further sums which Jernigan might pay to Bostrom in satisfaction of the $270,000 judgment.

At trial Jernigan's claims were submitted to the jury on special interrogatories as to negligence, contributory negligence, and proximate cause. The jury found that Seguros was negligent in not initiating and attempting to bring about a settlement of Bostrom's claim against Jernigan within the limits of the $5,000 policy, that such failure was the proximate cause of the $270,000 judgment, and that Jernigan was not guilty of any contributory negligence in failing to communicate to Seguros the $5,000 offer that Bostrom's attorney had made to Jernigan in June of 1960. The jury also found that Jernigan had made a bona fide payment to Bostrom in partial satisfaction of the $270,000 judgment. The trial court thereupon rendered judgment for $10,100 in favor of Jernigan and against Seguros, including in its decree an order that Seguros pay Jernigan "such sums as and when he may hereafter pay on the judgment recovered against him by Maynard Bostrom until such judgment is fully satisfied." Seguros then filed this appeal.

Petty pother aside,[5] Seguros urges error in the district court's disposition of its case in three particulars. First, it argues that Jernigan's recovery in the instant case is barred by limitations because this suit was filed more than two years after judgment was rendered in the earlier suit against Jernigan. Secondly, Seguros submits that the judgment below must be reversed because of an erroneous application of the doctrine of collateral estoppel. Finally, it argues that the district court's judgment must be modified to exclude that portion of the decree which encompasses future payments to Jernigan.

## I.

We direct our attention first to the limitations problem. Both parties agree that the present suit was filed more than two years after judgment was

---

5. We have considered Seguros' claim that the district court erroneously denied its request to certify the limitations issue to this court pursuant to 28 U.S.C.A. § 1292(d). We find this contention without merit.

rendered against Jernigan,[6] and less than two years after the $10,100 payment was made by Jernigan to Bostrom.[7] Since the two year limitations period is here applicable,[8] this action is barred if the statute of limitations runs from the date of judgment. On the other hand, the suit is still viable if the countdown commences from the date of payment.

■ Direction is given to our consideration of this problem by Seguros v. Bostrom, *supra*. In that opinion we considered the rationale for and against a judgment-day cause of action and a payment-day cause of action. We concluded that Texas law required the plaintiff to make payment on the judgment before a Stowers type suit could be maintained:

"In Universal Automobile Insurance Co. v. Culberson, 1935, 126 Tex. 282, 86 S.W.2d 727, reh. den'd, 87 S.W.2d 475 (Tex.Com.App. opinion adopted 1935), the injured party had recovered an uncollectible excess judgment against the insured. Both parties jointly sued the insurer for the amount of the judgment. The Texas Supreme Court held that neither was entitled to recover. The court first dealt with the claim under the policy for the maximum coverage of the policy. * * * The court then dealt with the claim above the policy limits under the Stowers doctrine. The court held that the policy provisions did not give the injured party or the insured any claim against the insurer, because the excess judgment against the insured had not been paid: 'Nor do they give him any right to sue for damages because of failure of the company to make a settlement of Miss Witt's claim. As to his alleged cause of action in that regard, *Culberson cannot assert same un-*

*til he has paid some sum on the judgment in excess of the $5,000 limit in the policy; and then only to the extent of his payment.'* (Emphasis supplied.) 126 Tex. at 289, 86 S.W.2d at 730–731. * * * Culberson therefore requires this Court to find that neither the insured nor the claimant has standing to sue until the insured has paid some amount on the excess judgment; the insurer is then liable only to the extent of the insured's payments. See Kronzer, The Present Status of the Stowers Doctrine in Texas, 1 Sou.Tex. L.Jour. 167, 171 (1954)."

Appellant does not challenge this reading of *Culberson*. It simply maintains that Linkenhoger v. American Fidelity & Casualty Co., 1953, 152 Tex. 534, 260 S.W.2d 884, whether or not consistent with Culberson, still stands for the proposition that the statute of limitations begins to run from the time of judgment. In support of this view, appellant relies on the following language from *Linkenhoger:*

"We sustain the petitioner's point and hold that limitation did not begin to run in any event until the judgment in the former case became final and, therefore, that this cause of action is not barred by the two-year statute of limitations." 260 S.W.2d at 887.

The above language, if read in context, does not support appellant's position. *Linkenhoger* involved a suit which was begun more than two years after a rejection of an offer of settlement, but less than two years from the date of judgment against the insured. The trial court of Lynn County, Texas, held that the suit was barred by limitations because the two year statute had begun to run as of the last date when the in-

---

6. Judgment was rendered against Jernigan on February 12, 1962 and became final on or about March 14, 1962. The instant case was filed on January 10, 1967.

7. Jernigan made partial payment on the judgment against him on October 31, 1966.

8. This court's opinion in Seguros Tepeyac, S.A., Compania v. Bostrom, 347 F.2d at 175, has already determined that Texas law and not Mexican law applies to the present suit. Since Texas law controls, the two year limitations period of Vernon's Ann.Tex.Rev.Civ.Stat. Art. 5526 (1958) is applicable. See Linkenhoger v. American Fidelity & Casualty Co., 1953, 152 Tex. 534, 260 S.W.2d 884.

sured rejected an offer of settlement. On appeal, the Texas Supreme Court was asked only to determine whether the suit was still viable. All parties accepted the fact that if the limitations period did not begin *earlier* than the date of judgment, then the two years had not expired, and the suit was improperly dismissed. In making its decision, the Texas Supreme Court had no occasion and no need to consider the effect on the limitations period of a failure by the insured to make a payment on the judgment. It was sufficient for the Court to say that "limitation did not begin to run *in any event* until the judgment in the former case became final." (Emphasis added.) 260 S.W.2d at 887. The court was merely emphasizing that under no conceivable circumstances could the limitations period commence *earlier* than the final judgment. This holding did not rule out the possibility that under other circumstances, e. g., where there is no prepayment by the insured, the limitations period might not begin until *later* than the time of judgment.

Appellant's reading of *Linkenhoger* fails to recognize the latter possibility. Yet that reading is the only one consistent with the fact that *Linkenhoger* expressly approved *Culberson.*[9] So long as *Culberson* and *Linkenhoger* are both good law in Texas, appellant's reading of *Linkenhoger* would require us to suppose that the Texas courts sanction the destruction of a cause of action before it actually arises. Under appellant's theory of *Linkenhoger,* a cause of action could disappear before the plaintiff had standing to maintain his suit.

By way of illustration, it is only necessary to recall that the rationale for the prepayment requirement of *Culberson* is that the insured is not *injured* until he has made some payment on the judgment in excess of the limits of his policy. Payment is therefore more than just a formal requirement. As noted by this court in Seguros v. Bostrom, the prepayment requirement is consistent with the general rule that "recovery in tort depends on a showing of injury; the insured is not injured until he pays some or all of the judgment against him." 347 F.2d at 178.

It is arguable, of course, as Judge Brown has so ably illustrated in Seguros, that the mere existence of a large judgment against the insured should itself be a sufficient injury to confer standing upon the plaintiff.[10] But persuasive as the reasons for change may be,[11] this court is *Erie* bound to fol-

---

9. See Linkenhoger v. American Fidelity & Casualty Co., 260 S.W.2d at 885–886, and Seguros v. Bostrom, 347 F.2d at 180.

10. "From Linkenhoger we know that the assured's rights have been invaded as a consequence of the insurer's failure prudently to settle when the assured's liability and extent thereof has been determined by final judgment in the damage suit. In the light of this, we can no longer assume that Texas would undertake to declare as law a thing so absolutely in conflict with sheer economic fact—that the existence of a final judgment for a large sum does not damage the judgment debtor. Perhaps I reflect a parochial tendency, but I am confident that the Supreme Court of Texas would not in this day and era forecast for one of its young citizens a life so bleak and economically unrewarding as this legal theory necessarily implies." (Concurring opinion) 347 F.2d at 186.

11. Judge Brown has been an eloquent advocate for the abolition of the *Culberson* prepayment rule. On grounds of judicial procedure he has argued :

"If giving literal effect to Linkenhoger's literal approval of what Culberson literally said, we add to the Linkenhoger formula the Culberson requirement of payment, it produces this very startling and senseless result. The suit need not, indeed may not, be filed until payment. If there is no payment by the assured on the excess, the thing can rock along for, say, five, ten, fifteen, twenty, or twenty-five years without suit being permitted. But if, at any one of these times, a dollar is paid by or obtained from the assured on execution, the Stowers-Culberson suit can be commenced at that late date." 347 F. 2d at 185.

low *Culberson.* So long as *Culberson* requires prepayment as evidence that the insured has been actually injured, it is solecistic to suppose that the statute of limitations begins to run against him at a date which precedes his injury. To so construe *Linkenhoger* would violate both the logic and the rationale of the case itself. As said by the Supreme Court in *Linkenhoger,* quoting from Williams v. Pure Oil Co., 124 Tex. 341, 78 S.W.2d 929, 931:

> "It seems to be the settled law of this state that limitation does not begin to run until the right or cause of action accrues. The right or cause of action does not exist until facts exist which authorize the person asserting the claim to seek relief in a court of competent jurisdiction from the person due to make reparation. * * *"

Since prepayment is an essential prerequisite to the bringing of suit in a Stowers type situation, it is reasonable to suppose that the "right or cause of action does not exist" until prepayment has been made. It follows therefore that the limitations period must abide the prepayment.

In reaching this result, we do not mean to intimate any greater satisfaction with the prepayment requirement of the Stowers doctrine than did our brethren in the *Seguros* case. We find both authority[12] and persuasive reasoning[13] in favor of its abolition. However, in fairness to a complex problem it must be said that the practical difficulties in the wake of *Stowers, Culberson* and *Linkenhoger* extend well beyond the possible demise of the prepayment requirement. It should be pointed out, for example, that even if the prepayment rule were abolished, and the insured could recover from his insurance company immediately or shortly after the judgment against him, there would still be no legally serviceable procedure available under Texas law to insure an expeditious and risk-free recovery by the party who was initially injured. In fact, it was this danger which the prepayment rule was in large measure designed to meet. See Lacy v. Mid-Continent Casualty Co., S.D. Texas 1965, 247 F.Supp. 667, 673. One need only consider the vagaries of the attachment process, the temptations which might attend the receipt of a large

Judge Brown has also criticized the prepayment rule as a source of great individual injustice:

> "Moreover, this huge judgment, ubiquitous and perpetual, with an almost scriptural tenacity from the break of day to the dark of night is with him [the assured] always. In an economic society geared to the use of credit for both personal and business acquisition, this judgment stands in the way. It is a lien on all property and his opportunity to meet the needs of himself or his family is encumbered or frustrated as prospective vendor-creditors learn that he is already committed beyond the prospective lifetime earning capacity of the average American. Like Sergeant Smoot, who depended on his Air Force pay and the credit that modest income would generate, this assured's plans for the development of his life, the welfare, health, education of himself and his children and the opportunity through diligence and savings to acquire things that make life a more pleasant experience are all things which are in the hands of this judgment creditor. Un-

> less—even in this enlightened day—we still demand leg irons and chains, this is peonage in fact. It is the interests of the assured, not the damage claimant-judgment creditor, that are at stake here. One can agree, as this Court does in echoing the Second Circuit, that there is no basis for the notion that an insurer gets an unjustified windfall because the damage claimant does not reap the excess judgment over the policy limits. Harris v. Standard Acc. & Ins. Co., 2 Cir., 1961, 297 F.2d 627, 631–633. But the plight of the assured cannot be so easily brushed away. It is ironic that the insurer, because of the peculiar nature of the tort inflicted, wrecks such damage that it may be impossible for the injured assured ever to recover a single cent." 347 F.2d at 187–188.

12. Seguros v. Bostrom, 5 Cir., 347 F.2d 168, 185; Smith v. Transit Casualty Co., E.D.Texas 1968, 281 F.Supp. 661, 667; Lacy v. Mid-Continent Casualty Co., S.D. Texas 1965, 247 F.Supp. 667, 673.

13. See footnotes 10 and 11, *supra.*

judgment, and the possible ignorance of the injured claimant that his once judgment-proof debtor is now an enriched man, to realize the necessity for some guarantee that the insured's recovery will not be dissipated or concealed before it inures to the rightful benefit of the injured party. However, while such protection is necessary, the price exacted for it, as embodied in the prepayment requirement, may be too high.[14] The ultimate problem, then, is not the simple abolition of the prepayment rule, but the discovery of an alternative that retains its advantages and discards its liabilities.

A number of possibilities for judicial and legislative reform suggest themselves and have been suggested, though to date with no noticeable results. In Lacy v. Mid-Continent Casualty, for example, the district court suggested the use of a declaratory judgment procedure in conjunction with the prepayment rule. According to this proposal, the insured would receive an early declaration of his rights immediately following the judgment against him. At the same time the prepayment requirement would safeguard the rights of the injured party because the insured would have to pay him before the declaratory judgment would be legally enforceable.

Other alternatives that seem promising include some adaptation of the direct action statutes to meet the peculiarities of the Stowers situation, or a procedure whereby monies recovered under the Stowers doctrine are paid into the registry of the court until such time as the insured demonstrates that notice has been given to the injured claimant. Whatever the short-range solution, however, it is clear that the entire area of automobile liability is ripe for legislative reappraisal. Keeton, Liability Insurance and Responsibility for Settlement, 67 Harv.L.Rev. 1136, 1176 (1954); Keeton and O'Connell, Basic Protection—A Proposal for Improving Automobile Claim Systems, 78 Harv.L.Rev. 329 (1964). In the meanwhile, state courts can only patch the worst abuses and federal courts, bound as they are by state law, must await change, not initiate it.

We have, of course, considered the possibility that Texas courts might today no longer adhere to *Culberson,* and by departing from that decision might affect the result reached in the case before us. But recent attempts to seek enlightenment on state law from the Texas courts have not been successful, see United Services Life Insurance Company v. Delaney, 5 Cir. 1964, 328 F.2d 483, cert. denied, Paul Revere Life Ins. Co. v. First National Bank in Dallas, 377 U.S. 935, 84 S.Ct. 1335, 12 L.Ed.2d 298, and United Services Life Insurance Company v. Delaney, Tex.1965, 396 S.W.2d 855, 859–864, and we are therefore obliged to accept *Culberson* and *Linkenhoger* with whatever shortcomings and contradictions they may possess. Spurned and thwarted though we are in our quest for more definitive Texas law, and straitjacketed though we are by *Erie,* we can nonetheless hope that the Supreme Court of Texas will some day toll the knell of *Culberson's* parting day and grant it, at long last, a graceful demise.

II.

With this visionary hope to comfort us, we turn next to appellant's claim that the district court misapplied the doctrine of collateral estoppel in excluding certain evidence at trial. Initially, the court was of the view that Seguros v. Bostrom, *supra,* had foreclosed the issues of the insurer's negligence, the insured's contributory negligence, and the question of proximate cause. Out of an excess of caution, however, these issues were all presented to the jury, and the jury rendered its verdict in favor of Jernigan. Seguros objects, nonetheless, to the exclusion from evidence of two subordinate issues that the court refused to have relitigated: 1) the terms of the insurance policy and 2) the question of whether the policy had been delivered to Jernigan for his inspection during his defense

14. See footnotes 10 and 11, *supra.*

of the Bostrom suit. Appellant argues that due to an exclusion in its insurance policy of liability for injury to third parties,[15] the terms of the policy and its delivery to the appellee were important elements of its claim of non-negligence.

We begin by noting that the terms of appellant's insurance policy, including its claim to a liability exclusion clause, were fully investigated in the first *Seguros* case and were essential to the trial court's judgment.[16] As said in the opinion by Judge Brewster:

"There is no evidence to substantiate the defendant's contention made in some of its letters and on the trial of this case that the policy it delivered to Jernigan included an additional sheet containing specifications of risks excluding liability for injuries to third parties riding as passengers in the insured automobile." 225 F.Supp. at 227.

On this record it is only necessary to ask whether all the elements of estoppel are present in order to determine whether relitigation of the terms of the insurance policy is now foreclosed.

■ Collateral estoppel like res judicata operates to prevent a question of law or an issue of fact that has once been litigated and adjudicated in a court of competent jurisdiction from being relitigated in a subsequent suit between the same parties or those in privity with them. Swilley v. McCain, Tex.1963, 374 S.W.2d 871, 874; Fireman's Fund Insurance Company v. Bybee, Tex.Civ.App. 1959, 322 S.W.2d 657, 659, writ dism'd. w. o. j., 160 Tex. 429, 331 S.W.2d 910. Unlike res judicata, however, the application of collateral estoppel requires no showing that the cause of action in the first suit is identical with the cause of action in the subsequent suit. Hyman v.

Regenstein, 5 Cir. 1958, 258 F.2d 502, 509, fn. 1, cert. denied, 359 U.S. 913, 79 S.Ct. 589, 3 L.Ed.2d 575. So long as "an essential issue of fact has been determined and adjudicated, the judgment therein will estop the parties from relitigating the same issue in a subsequent suit between the same parties, even though the subsequent suit is upon a different cause of action." (Emphasis added.) Kirby Lumber Corp. v. Southern Lumber Co., 1946, 145 Tex. 151, 196 S.W. 2d 387, 388, 169 A.L.R. 174; Fireman's Fund Insurance Company v. Bybee, *supra*.

Appellant contends that collateral estoppel was incorrectly used to exclude evidence relating to the terms of its insurance policy because 1) the suit by Bostrom was in contract and the one by Jernigan in tort, and 2) Jernigan is neither the same party as, nor in privity, with Bostrom.

■ Since collateral estoppel operates only upon facts already litigated and essential to the judgment, Kirby Lumber Corp. v. Southern Lumber Co., *supra*, and not upon the claim for recovery itself, see Rio Bravo Oil Co. v. Hebert, 1937, 130 Tex. 1, 106 S.W.2d 242, 244, appellant's first contention is without merit. As said in Cromwell v. Sac County, 1876, 94 U.S. 351, 24 L.Ed. 195, cited with approval by the Texas Supreme Court in *Rio*:

"It is not the recovery, but the matter alleged by the party, and upon which the recovery proceeds, which creates the estoppel. The recovery of itself in an action of trespass is only a bar to the future recovery of damages for the same injury; but the estoppel precludes parties and privies from contending to the contrary of that point or matter of fact, which, having been

---

15. The exclusionary clause which the insurance company claims to have been part of its policy reads as follows:

"liability for bodily injuries suffered by third parties while riding in or on the described vehicle is not covered under this section."

16. For a full discussion of the requirement that matters affected by collateral estoppel be essential to the judgment, see Hyman v. Regenstein, 5 Cir., 1958, 258 F. 2d 502, 510, cert. denied, 359 U.S. 913, 79 S.Ct. 589, 3 L.Ed.2d 575, and The Evergreens v. Nunan, 2 Cir. 1944, 141 F.2d 927, 928, 152 A.L.R. 1187.

once distinctly put in issue by them, or by those to whom they are privy in estate or law, has been on such issue joined, solemnly found against them." 94 U.S. at 353 quoting from Outram v. Morewood, 3 East. 346.

■ Appellant's second contention as to the need for an identity of parties in a collateral estoppel situation is also without merit. We note, to begin with, that an increasing number of courts have dispensed with the requirements of identity of the parties or mutuality of estoppel in situations where the party against whom the estoppel is applied has already had his "day in court." United States v. Webber, 3 Cir. 1968, 396 F.2d 381, 385; Ham v. Aetna Life Insurance Company, N.D.Okla.1968, 283 F.Supp. 153; Musgrave v. Bronx Towing Line, Inc., S.D.N.Y.1963, 219 F.Supp. 918, 920; Factor v. Pennington Press, Inc., N.D.Ill. 1963, 230 F.Supp. 906; Bernhard v. Bank of America Nat'l Trust & Sav. Ass'n 1942, 19 Cal.2d 807, 122 P.2d 892. Such estoppel has been applied both "offensively" and "defensively." Cf. United States v. Webber, *supra,* and Bruszewski v. United States, 3 Cir. 1950, 181 F.2d 419, 422, cert. denied, 340 U.S. 865, 71 S.Ct. 87, 95 L.Ed.2d 632. See also Currie, Mutuality of Collateral Estoppel: Limits of the Bernhard Doctrine, 9 Stan. L.Rev. 281 (1957) and Currie, The Contributions of Roger J. Traynor—Civil Procedure: The Tempest Brews, 53 Calif.L.Rev. 25 (1965). One court has gone so far as to say that "the doctrine of mutuality is a dead letter" in the jurisprudence of the state. Schwartz v. Bronx City Public Administrator, 24 N. Y.2d 65, 298 N.Y.S.2d 955, 246 N.E.2d 725 (Feb. 29, 1969).

■ While Texas has not as yet affirmatively discarded the concepts of identity of the parties or mutuality of estoppel, Childress County v. Sachse, Tex. Civ.App.1958, 310 S.W.2d 414 (writ ref'd, n. r. e.) ; Swiley v. McCain, *supra,* we think the Texas courts would nonetheless hold collateral estoppel applicable under the circumstances of the case before us. Given the expanding concept of privity in Texas, see Marange v. Marshall, Tex.Civ.App.1966, 402 S.W.2d 236 (writ ref., n. r. e.), and given the fact that the relationship between the plaintiff herein and Bostrom involved an assignment, an intervention in the first suit, and a third-party beneficiary relationship,[17] cf. Merchants Corp. of Amer. v. 9655 Long Tons, More or Less, of No. 2 Yellow Milo, S.D.Texas 1965, 238 F. Supp. 572, 574; Southwestern Flooring & Sales Co. v. White, et al., Tex.Civ.App. 1927, 296 S.W. 916, 917 (no writ) ; Ray v. Chisum, Tex.Civ.App.1953, 260 S.W. 2d 118, 124 (writ ref'd, n. r. e.) ; Seaton v. Pickens, 1935, 126 Tex. 271, 87 S.W.2d 709, 106 A.L.R. 512, no useful public policy is served by permitting Seguros to relitigate its rights under an insurance policy that has already been expressly construed in a prior suit. Zdanok v. Glidden Company, Durkee Famous Foods Division, 2 Cir. 1964, 327 F.2d 944, 953, cert. denied, 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298. As to the meaning of the insurance policy,[18] therefore, and

17. The facts of the assignment, the intervention and the third-party beneficiary relationship are noted in the *Seguros* opinion as follows:

"June 24, 1964, while this case was on appeal, Jernigan assigned to Bostrom his claim against Seguros Tepeyac. He then filed with this Court a petition asking that he be permitted to intervene. We allowed the petition preliminarily. The intervention asks that the insurer discharge Bostrom's judgment against Jernigan. Bostrom, however, does not rely on the assignment. In the district court he sued in his own right as a third party beneficiary of the insurance contract." 347 F.2d at 172.

18. We intimate no view as to whether collateral estoppel could have been applied to the issues of negligence, contributory negligence and proximate cause since these issues were all litigated anew in the present suit. However, we have considered the effect of our partial reversal in *Seguros* in conjunction with the general rule that a judgment that has been re-

matters directly related thereto,[19] appellant had already had his "day in court." Marange v. Marshall, Tex.Civ.App.1966, 402 S.W.2d 236, 242 (writ ref'd, n. r. e.).

## III.

Finally, we consider appellant's attack on the appropriateness of the declaratory judgment which gave Jernigan recovery against Seguros for sums as yet unpaid.[20] Appellant Claims that the declaratory relief as to future payments does not insure that such payments will be "bona fide" as that term is used in Smith v. Transit Casualty Co., E.D.Texas 1968, 281 F.Supp. 661.

The *Smith* case involved a Stowers type claim by the insured against her insurance company for negligent failure to settle within the limits of her policy. The prepayment requirement had ostensibly been met by the plaintiff, Mrs. Smith, when she executed a note to the injured claimant, a Mrs. Selz, for $51,-375.00 and delivered a check for $5.00 as an initial payment on the note. The court held that in view of Mrs. Smith's advanced age, future earning capacity and present financial situation, the note did not constitute a "bona fide" payment on the judgment. Mrs. Smith had testified that $5.00 a month was all she could pay out of her pension. In this context, the court held that the prepayment requirement of *Culberson* had not been met by the note, and awarded judgment to

Mrs. Smith's assignee, Mrs. Selz, only as to the $5.00 payment by check.

While we agree with appellant and with the *Smith* case that prepayment under the Stowers doctrine must not be accomplished by use of a sham note or other fraudulent device, we read the declaratory order of the district court below as referring only to "bona fide" sums paid on the judgment. As indicated by the *Smith* case, a payment made by a note that can never be discharged by the maker is not, for purposes of *Culberson*, any payment at all. It cannot, therefore, fall within the scope of the court's declaratory judgment.

In the case *sub judice*, no challenge is made to the financial substance of the $10,100.00 payment made by Jernigan to Bostrom. Appellant questions only the character of payments yet to come. Since any payments that might be illusory fall outside the scope of the court's declaratory order, that order, relating as it does only to genuine payments, was entirely appropriate. As said in the *Smith* case where declaratory relief was granted despite the existence of a sham payment:

"It would be a useless waste of time and effort for the Plaintiffs to be required to come back into this Court seeking an order of reimbursement each time a payment is made on the excess judgment * * *. Therefore, in addition to a money judgment * *,

versed cannot be "the basis for a claim of estoppel or res judicata," Keller v. Hall, 9 Cir. 1940, 111 F.2d 129, 131, and find such partial reversal without significance. This court affirmed the judgment of the district court in *Seguros* up to the limits of the insurance policy. Since construction of the insurance policy was "essential to that judgment," Restatement of Judgments, Section 68(o) and 68(p), The Evergreens v. Nunan, 2 Cir. 1944, 141 F. 2d 927, 928, 152 A.L.R. 1187, relitigation of the meaning of the policy is foreclosed. The fact that the meaning of the policy might also have relevance to Seguros' lia-

bility in tort does not justify its relitigation. Hurley v. Beech Aircraft Corp., 7 Cir. 1966, 355 F.2d 517, 522, cert. denied, 385 U.S. 821, 87 S.Ct. 48, 17 L.Ed.2d 59.

19. The fact of delivery of the insurance policy to Jernigan during the pendency of the Bostrom suit is of no use to Seguros as a defense once Seguros is foreclosed from disputing the terms of that policy. The question of delivery was therefore also properly excluded at trial.

20. See p. 720 of this opinion for the terms of the trial court's declaratory order.

this Court deems this an appropriate situation to grant a Declaratory Judgment. The remedy is fully available in Texas and is also an important element of Federal practice." 281 F.Supp. at 670.

We conclude by noting that the future or contingent character of payments that might be made on the Bostrom judgment in years to come does not destroy the appositiveness of declaratory relief. "Where there is an actual controversy over contingent rights, a declaratory judgment may nevertheless be granted." American Machine & Metals v. De Bothezat Impeller Co., 2 Cir. 1948, 166 F.2d 535, 536. Since there can be no doubt that an actual controversy exists between Jernigan and Seguros, the mere prospectivity of future payments should not be allowed to inhibit a sensible and practical form of judicial relief. As said by Judge Brown in Travelers Insurance Co. v. Busy Electric Co.:

> "Relief need not be thwarted by the nature of indemnity which ordinarily imposes an obligation to reimburse another only after sustaining a loss. This may be handled either by a conditional decree, United Gas Corp. v. Guillory, 5 Cir., 1953, 206 F.2d 49, at page 53, or the entry of a declaratory judgment, F.R.Civ.P. 57; 28 U.S.C.A. § 2201." 294 F.2d 139 at 145.

See also, Lacy v. Mid-Continent Casualty Co., 247 F.Supp. at 672–673; Smith v. Transit Casualty Company, 281 F.Supp. at 670; Ainsworth v. Oil City Brass Works, Tex.Civ.App.1954, 271 S.W.2d 754, 761 (no writ).

The declaratory judgment is an effective tool in judicial administration. We should not be niggardly in its use, nor encase it with inflexibilities and rigidities, but rather hone it to specific problems.

The judgment is

Affirmed.