Jesus R. HERNANDEZ, Appellant,

v.

GREAT AMERICAN INSURANCE COMPANY OF NEW YORK et al., Appellees.

No. 488.

Court of Civil Appeals of Texas, Corpus Christi.

June 30, 1970.

Rehearing Denied July 23, 1970.

McCullough, Murray & McCullough, Carter, Stiernberg, Skaggs & Koppel, Adams, Graham, Lewis, Jenkins & Briscoe, Harlingen, for appellant.

Cox, Wilson, Duncan & Black, Brownsville, for appellees.

## OPINION

NYE, Justice.

Jesus R. Hernandez brought suit against the appellee insurance companies to establish liability under the doctrine announced in the Stowers case.[1] Plaintiff's case was dismissed based upon defendants' plea of limitation.

Hernandez plead in the suit that the appellee insurance companies were negligent in failing to settle a prior law suit within the limits of his policy of liability insurance. The basis for his complaint came about in the following manner. Hernandez plead that the appellee insurance companies were in the business of insuring casualty risks in Texas, and had issued and delivered to him a standard combined automobile policy. He alleged that one of his employees, on a certain occasion while operating a vehicle belonging to him, collided into the rear of a vehicle operated by A. T. Baucum. Baucum sustained severe personal injuries. Baucum then instituted a suit against Hernandez for damages alleging that Hernandez' employee negligently damaged him in excess of $155,000.00. In March 1960 the Baucum v. Hernandez case came on to trial. The insurance companies furnished their attorneys to represent Hernandez in his defense. Based upon a jury verdict in that case a final judgment was entered awarding Baucum the sum of $81,686.00. That case was affirmed by the San Antonio Court of Civil Appeals in March 1961. Thereafter, on May 24, 1961, the Supreme Court of Texas refused an application for writ of error.[2]

---

1. Stowers Furniture Co. v. American Indemnity Co., 15 S.W.2d 544 (Tex.Comm'n App.1929).

2. Hernandez v. Baucum, 344 S.W.2d 498 (Tex.Civ.App.—San Antonio 1961, writ ref. n. r. e.).

Hernandez alleges that his liability insurance policy limited his coverage to $25.000.00 for each person receiving bodily injuries; that on several occasions prior to and during the trial of the Baucum case, the attorneys representing Baucum offered to settle their cause of action for a sum within the policy limits of liability. The offer of settlement of $24,000.00, was rejected by the insurance companies. Hernandez alleges that the refusal of the insurance companies to settle the Baucum claim constituted negligence and that such negligence was a proximate cause of the excess judgment which was entered against him.

Following the action of the Supreme Court, the insurance companies paid Baucum the sum of $25,000.00. This was in partial satisfaction of Baucum's judgment against Hernandez.

On June 10, 1967, the Sheriff of Cameron County in obedience to an order of sale, levied execution upon the right, title and interest of Hernandez in a certain parcel of land. This property, belonging to Hernandez, was sold on August 1, 1967 by the Sheriff at public auction on the steps of the courthouse in Brownsville, Texas, for the sum of $10,500.00. This amount was paid to Baucum and credited by him on the excess judgment he held against Hernandez. Hernandez contended in this suit, that by reason of the negligence of the insurance companies in failing to settle and compromise Baucum's cause of action against him, he was damaged in the amount which he involuntarily paid on the excess portion of the judgment (i. e. $10,-500.00).

The defendant insurance companies (appellees here) answered and asserted, among other things, that plaintiff's cause of action, if any he has, occurred more than two years prior to the commencement of this present suit, and that the same is clearly barred by the two and/or four-year statute of limitations.

Hernandez' cause of action (a Stowers doctrine case) against his insurance company for excess liability, is one sounding in tort, to which the two-year statute of limitations is applicable. Linkenhoger v. American Fidelity & Casualty Co., 152 Tex. 534, 260 S.W.2d 884 (1953); Art. 5526 Vernon's Ann.Civ.St. It is also clear that Hernandez' cause of action for excess liability did not commence to run on the occasion of the insurer's rejection of the last offer of settlement, as that question was also settled in Linkenhoger. It is Hernandez' contention, however, that his cause of action for the $10,500.00 against the insurance companies did not occur until August 1, 1967, when he made the involuntary payment on the excess judgment. Therefore, he argues that the two-year limitation did not commence to run against him on his cause of action until such date. The insurance companies contend on the other hand, that Hernandez' cause of action against them accrued on May 24, 1961, when the judgment against Hernandez became final in the Supreme Court of Texas.

The sole question before us then, is: When does the two-year statute of limitation commence to run on a Stowers type suit where the policy was a liability rather than an indemnity insurance policy? Is it on the date the judgment against the insured becomes final, (the Judgment Rule) or is it when the insured makes (some) payment on the excess portion of the judgment? (Prepayment Rule)

Hernandez submits that this precise question was resolved in his favor by Universal Automobile Insurance Co. v. Culberson, 126 Tex. 282, 86 S.W.2d 727 (Tex.Comm'n App.1935) which holding was expressly approved by the Supreme Court in Linkenhoger v. American Fidelity & Casualty Co., supra.

In the Culberson case the insurance company withdrew from the case before final judgment. An uncollectible judgment in excess of the policy limits was entered against the insured. Both parties then sued the insurer for the amount of the judgment. Culberson's policy was limited

to \$5,000.00 and contained a contractual "direct action clause" giving the injured person the right to bring suit against the insurer to enforce payment of the judgment up to the amount of the limits specified in the policy. The Texas Supreme Court held under this indemnity type policy that the provisions of the Culberson policy did not give Culberson the right to prosecute a suit in his own behalf against the company before paying the judgment; nor did his policy give him the right to sue the company for damages because it failed to make a settlement of the claimant's cause of action until Culberson had paid some sum on the judgment in excess of the policy limits, and then only to the extent of such excess payment. See *Culberson* 86 S.W.2d at page 731.

Appellant contends that this holding in Culberson, when coupled with the express approval of Culberson by the Supreme Court in Linkenhoger, compels the conclusion that under the present Texas Stowers Doctrine the two-year statute of limitation does not begin to run against an insured until he has made some payment on the excess judgment, and then only as to the amount of such excess payment. Appellant argues that payment on the excess judgment is a prerequisite to a Stowers cause of action, citing Seguros Tepeyac, S. A., Compania Mexicana v. Bostrom, 347 F.2d 168.[3] Quoting from Bostrom, the 5th Circuit Court of Appeals said:

> "We summarize our holding. The Texas Stowers doctrine encompasses the principle that an injured claimant has standing to sue the insurer as a third party beneficiary of the insurance contract, but may sue only up to the amount of the policy limits. The Culberson limitation on the doctrine deprives the insured of standing to sue the insurer for the excess, except as to any amounts paid on the judgment in favor of the injured

claimant. The claimant's rights in an action against the insurer can rise no higher than the insured's rights. When, as in this case, the insured has no standing to sue because of not having paid all or part of the judgment for the excess, the injured claimant has no standing to sue the insurer for the excess over the policy limits. * * *" 347 F.2d 168, 182.

It is correct that the Supreme Court in Linkenhoger expressly recognized the Culberson holding. Actually, what the Supreme Court said in Linkenhoger about the Culberson case was:

> "The opinion in the case of Universal Automobile Insurance Co. v. Culberson, 126 Tex. 282, 86 S.W.2d 727, clearly supports petitioner's contention."

Just exactly what "petitioner's contention" was, the Supreme Court said:

> "Petitioner contends that limitation did not begin to run until the judgment became final against him and that this suit having been filed within two years of that date, the same is not barred."

The petitioner in Linkenhoger was not contending that the limitation period did not begin to run until some payment had been made on the judgment in the former suit. The insurer contended that a Stowers type suit arose at the time that the negligent rejection of a prudent settlement offer was made. The insured contended that the invasion of his rights had not taken place until the injured claimant's judgment for an excess amount had become final. The limitation problem turned, on when the insured could have commenced a suit to recover damages against his insurer, since no mention was made of the date on which the excess judgment was paid by Linkenhoger. This undoubtedly occurred at a later time. The Supreme Court in Linken-

---

3. For companion case affirming Prepayment Rule see Seguros Tepeyac, S.A., Compania Mexicana v. Jernigan, 410 F. 2d 718 (1969) and also see Smith v. Transit Casualty Company, 281 F.Supp. 661 (1968) affirmed 410 F.2d 210 (1969) following Prepayment Rule.

hoger determined the limitation question at the earliest date on which suit could have been filed. The Court said:

> "The petitioner, Linkenhoger, could not have maintained this present suit until such time as his liability and the extent thereof had been determined by a final judgment in the former case. Until then his rights had not been invaded by respondent's (insurer) failure to accept the terms of settlement offered and the tort was not complete.
>
> We sustain the petitioner's point and hold that limitation did not begin to run in any event until the judgment in the former case became final and, therefore, that this cause of action is not barred by the two-year statute of limitation."

In order to determine the beginning date upon which the two-year statute of limitations commences, we must determine when did the cause of action arise? Hernandez' cause of action was a tort. The interpretation of the statute as applied to torts has been such that "the statute does not usually begin to run until the tort is complete * * A tort is ordinarily not complete until there has been an invasion of a legally protected interest of the plaintiff." Restatement of Torts, § 899.

A number of the cases which hold that payment by the insured is a prerequisite to a completed tort, is based upon the theory that to recover in tort there must be a showing of injury. The rationale being that the insured is not injured by the entry of the judgment against him, but only sustains an injury after he pays voluntarily or involuntarily some or all of the excess judgment against him.[4]

■ We believe that Hernandez' cause of action, if any, arose as soon as he incurred a binding final judgment in excess of his policy limits. In such a situation (Stowers Doctrine) an outstanding judgment constitutes a legal injury contemplated by law. The Supreme Court of Texas in Atkins v. Crosland, 417 S.W.2d 150 (Tex.Sup.1967) determined this precise question and quotes from 54 C.J.S. Limitations of Actions § 168, pp. 122–123:

> "The test to determine when the statute of limitations begins to run against an action sounding in tort is whether the act causing the damage does or does not of itself constitute a legal injury, that is, an injury giving rise to a cause of action because it is an invasion of some right of plaintiff."

A legal injury must be sustained before a cause of action arises. Quoting also from 34 Am.Jur., Limitation of Actions, § 160, p. 126:

> "As regards the running of the statute of limitations applicable to torts, a cause of action accrues only when the force wrongfully put in motion produces the injury, the invasion of personal or property rights occurring at that time." Citing Quinn v. Press, 135 Tex. 60, 140 S.W.2d 438 (1940).

We might add to the above that the word "injury" is used throughout the Restatement of Torts "to denote the fact that there has been an invasion of a legally protected interest which, if it were the legal consequence of a torteous act would entitle the person suffering the invasion to maintain an action of tort." Restatement of Torts, § 7, Injury, p. 16.

The weight of authority in the United States that payment of the excess judgment is not a condition precedent to a suit by the insured against his insurer is based upon a number of different reasons.[5] However, the most logical basis is built upon

---

4. Prepayment Rule cases: Seguros Tepeyac, S.A., Compania Mexicana v. Bostrom, 347 F.2d 168; Seguros Tepeyac, S.A., Compania Mexicana v. Jernigan, 410 F.2d 718 (1969); Smith v. Transit Cas-

ualty Company, 281 F.Supp. 661 (1968), affirmed 410 F.2d 210 (1969).

5. Robert E. Cohen, 27 University of Pittsburgh Law Review 726.

the foundation that the judgment in excess of the policy limits is an injury to the insured.[6] It provides a constant threat to the insured's financial security. It is not realistic to say that an insured has not been damaged because a judgment that remains unsatisfied is held against him. Credit depends upon a person's ability to pay his obligations. His inability to pay a judgment harms his financial reputation. It prevents him from borrowing money, obtaining new credit, and puts in motion an invasion of his personal right to be free from a judgment debt cause by the negligent acts of another. As the Court in Smoot v. State Farm Mutual Automobile Insurance Co., 299 F.2d 525 (5th Cir. 1962) said:

"  *  *  *  So long as this judgment remains outstanding as a lien on the Assured's property he is thwarted in a disposition of it. If proper procedural steps are taken, new property likewise comes under the pervasive weight of the lien. And all the while, of course, credit resources are imperiled—a result even more inescapable if, as the Insurer now suggests, the victim of its assumed neglect must take bankruptcy."

In American Fire and Casualty Company v. Davis, 146 So.2d 615 (Fla.Dist.Ct.App. 1962) the intermediate court stated:

"  *  *  *  A man's credit in this day and age is one of his most valuable assets and without it, a substantial portion of the American people would be without their homes, washing machines, refrigerators, automobiles, television sets, and other mechanical paraphernalia that are now regarded as necessities of life. *  *  *"

In Malley v. American Indemnity Corporation, 297 Pa. 216, 146 A. 571 (1929), in rejecting the payment rule the court quoted and said:

" 'It is even more important to an assured who is in financial stress that no judgment be allowed to stand unsatisfied against him than it is to one who has abundant means to satisfy it with.'  *  *  *

"Loss does not have an inflexible meaning, and may consist of many different situations of varying gradations. Voluntary or involuntary separation from one's money is not the only criterion of loss. Any shrinkage in value of estate or property may on proper occasions be rightfully so termed. *  *  *  *We hold there is a potential loss, though money may not have been actually paid; the insured may sue the company directly after judgment and before he pays anything  *  *  *.*" (emphasis supplied.)

There cannot be any denial that the persuasiveness of these arguments are sound. There is indeed an inherent injustice in a procedure which requires payment before the cause of action arises in the insured.

"If the insured cannot pay, he cannot sue, and this permits the insurer to breach its duty and refuse to settle, with little danger of ever being held liable for anything greater than the policy limits. Further, to force a poor man into hiding from his creditors, or into insolvency or bankruptcy, is to cause him to suffer damaging financial insecurity and loss of credit."[7]

The principle in the case before us is very close to that in the Atkins v. Crosland, supra. In that case a taxpayer sued his accountant for negligence in employing the wrong method of accounting as a result of which the Internal Revenue assessed the taxpayer with a deficiency of $12,000.-00. The accountant plead limitation on the ground that the negligent acts occurred more than two years before the suit was filed. The taxpayer claimed the suit was

---

6. See concurring opinion by Judge Brown in Seguros Tepeyac, S.A., Compania Mexicana v. Bostrom, 347 F.2d 168 at 182.

7. Robert E. Cohen, 27 University of Pittsburgh Law Review 726.

one for indemnity and that the limitations did not start to run until the taxpayer had paid the excess taxes caused by the accountant's negligence. The Supreme Court discarded both of these theories and agreed with the taxpayer's alternate theory that the limitation began to run when the Internal Revenue assessed the deficiency.

" * * * we have concluded that the plaintiff's (taxpayer) cause of action did not arise until the tax deficiency was assessed by the Commissioner of Internal Revenue. *Prior to assessment the plaintiff had not been injured. That is, assessment was the factor essential to consummate the wrong—only then was the tort complained of completed.* If a deficiency had never been assessed, the plaintiff (taxpayer) would not have been harmed and therefore would have had no cause of action." (Emphasis supplied.)

The Court in Atkins stated what it had previously held in Linkenhoger which is decisive of the case before us.

" * * * On appeal, this Court held that since the plaintiff's (Linkenhoger) liability in the first suit could not be determined until a final judgment was rendered, *the statute of limitations began to run from that date,* not when the insurer last refused to settle." (Emphasis supplied.)

Although the Culberson case held that the alleged cause of action did not accrue until the insured paid some sum on the judgment in excess of the policy limits, the Culberson case is readily distinguishable from the case at bar. In Culberson the policy was an indemnity type policy, whereas, in the case before us, as well as in the Linkenhoger case, the policy involved was a liability policy.

The Supreme Court in Atkins in determining that limitations began with the assessment (judgment) rather than when the taxpayer paid the excess taxes (Prepayment Rule) stated that they were not unmindful of the policy behind the statute of limita-

tions, that is: "To prevent the litigation of stale claims." A stale claim is one which has for a long time remained unasserted. The judgment in this case became final on May 24, 1961. This suit was filed in May 1968. Where a party first asserts a claim after an unexplained delay of a great length of time, it makes it difficult and sometimes impossible for a court to ascertain the truth of the matters in controversy, and at the same time, do justice between the parties. 30A C.J.S. Equity § 112, p. 23. Unless declaratory relief is open to an insured prior to payment by him on the excess judgment, his cause of action could be lost forever. If at the time of entry of judgment the insured was judgment proof, and only became financially responsible in later years, his claim would be stale where it was permitted to rest without use. It might be inequitable to permit him to enforce such claim against the insurer many years later. For instance, our methods of preserving vital evidence are awkward and unsure and by the time that the insured made payment, either voluntarily or involuntarily, his claim against the insurer could very likely be stale and difficult to prove or defend.

We hold that limitations commenced to run on Hernandez' cause of action when the judgment against him became final. The trial court was correct in sustaining the plea of the two-year statute of limitation.

The judgment of the trial court is affirmed.

Affirmed.

SHARPE, Justice (dissenting).

I respectfully dissent. I would sustain appellant's sole point of error which asserts that the trial court erred in sustaining appellees' pleas of limitation and in thereafter dismissing appellant's suit.

The record reflects that the dismissal of appellant's suit resulted from the action of the trial court in sustaining a special ex-

ception contained in Paragraph I of appellees' (defendants') answer to the effect that it appeared from the face of appellant's (plaintiff's) original petition that any cause of action appellant may have had against appellees accrued more than two years, and, in the alternative, more than four years, prior to the commencement of this suit, and that same is barred by the statute of limitation of such period of years, each respectively.

The Texas Supreme Court cases primarily involved are Stowers Furniture Company v. American Indemnity Co., 15 S.W. 2d 544 (Tex.Com.App., 1929, holdings approved); Universal Automobile Ins. Co. v. Culberson, 126 Tex. 282, 86 S.W.2d 727, 87 S.W.2d 475 (1935); and Linkenhoger v. American Fidelity & Casualty Co., 152 Tex. 534, 260 S.W.2d 884 (1953). These decisions, along with others, are extensively discussed in Seguros Tepeyac, S.A., Compania Mexicana de Seguros Generales v. Jernigan (5th Cir.App., 1969), 410 F.2d 718, a case appealed from the United States District Court for the Northern District of Texas, decided after rendition of the trial court judgment in this case. *Jernigan* is squarely in point, in favor of appellant, on the issue presented here. The court said in part:

"* * * On this appeal we are asked to determine whether the statute of limitations in a Stowers type suit begins to run: 1) on the date the claim against the insured is reduced to judgment, or 2) on the date or dates when the insured makes payment on the judgment to the injured claimant. The district court was of the view that the statute of limitations did not begin to run until the date or dates of payment, and for reasons hereinafter discussed, we agree."

The opinion in *Jernigan*, following the above quotation extensively analyzes and discusses the decisions in *Stowers, Culberson* and *Linkenhoger* and particularly refers to the companion cases of Bostrom v. Seguros Tepeyac, S.A., Compania Mexi-

cana de Seguros Generales (U.S.D.C., N.D. Tex., 1963) 225 F.Supp. 222, and Seguros Tepeyac, S.A., Compania Mexicana v. Bostrom (5th Cir. 1965) 347 F.2d 168. It is apparent from such discussion that there has been much criticism of the prepayment rule, suggested alternatives, and the expressed hope that it might be abolished by the Texas Supreme Court. However, the United States Court of Appeals for the Fifth Circuit in *Jernigan* held that, under Erie Railroad Company v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, it was bound to follow (considering *Stowers, Culberson* and *Linkenhoger*) the prepayment rule and applied it in that case by holding that limitation did not begin to run against Jernigan, the insured, until the date on which he made payment to Bostrom, the injured claimant who had recovered the judgment against Jernigan in excess of the policy limits.

In my view, the decision in *Jernigan* correctly declares the existing state of Texas law on the question presented in this case. In *Jernigan* the suit was filed more than two years after judgment was rendered against him and less than two years after he made payment to Bostrom. Similar facts exist here. The judgment here in favor of Baucum against Hernandez, appellant here, became final on May 24, 1961. On August 1, 1967, as the result of an execution sale of property belonging to Hernandez, the amount of $10,500.00 was credited on the judgment. Hernandez brought the present suit within two years of such payment on the judgment. If the prepayment rule, under *Stowers, Culberson* and *Linkenhoger* (as reiterated in *Jernigan*), is followed, which I feel bound to do, it appears that appellant's suit was timely filed and is not barred by limitation. If the prepayment rule is to be changed or clarified, such action would be for the Supreme Court.

There is some language concerning *Linkenhoger* in Atkins v. Crosland, 417 S.W.2d 150, 153, 154 (Tex.Sup.1967), which when considered standing alone ap-

pears favorable to appellees. However, the case is distinguishable on several grounds. Among other things, *Atkins* did not involve a policy of insurance or the *Stowers-Culberson* considerations nor some of the precise language in *Linkenhoger*. In my view, the decision in *Atkins* was not intended to include holdings or furnish guidance on the exact point with which we are here concerned.

I would reverse the judgment of the trial court and remand the case for trial.